1  Scott E. Davis
   State Bar No. 016160
2  SCOTT E. DAVIS, P.C.
   20827 North Cave Creek Road, Suite 101
3  Phoenix, AZ  85024

4  Telephone:  (602) 482-4300
   Facsimile:   (602) 569-9720
5  email: davis@scottdavispc.com

6  *Attorney for Plaintiff Anthony Lemesh*

7

8            UNITED STATES DISTRICT COURT

9               DISTRICT OF ARIZONA

10

11 Anthony Lemesh,                        Case No.

12          Plaintiff,                    **COMPLAINT**

13      v.

14 The Prudential Insurance Company of
   America, U.S. Foodservice, Inc., U.S.
15 Foodservice, Inc. Long Term Disability
   Plan,
16
          Defendants.
17

18      Now comes the Plaintiff Anthony Lemesh (hereinafter referred to as "Plaintiff"), by

19 and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

20                          ***Jurisdiction***

21      1.    Jurisdiction of the court is based upon the Employee Retirement Income

22 Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f).

23 Those provisions give the district courts jurisdiction to hear civil actions brought to recover

24 employee benefits.  In addition, this action may be brought before this Court pursuant to 28

25

26

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.     Plaintiff is a resident of Maricopa County, Arizona.

3.     Upon information and belief, Defendant U.S. Foodservice, Inc. (hereinafter referred to as the "Company") sponsored, subscribed to and paid for in whole or in part, a group disability insurance policy which was fully insured and administered by The Prudential Insurance Company of America (hereinafter referred to as "Prudential").  The specific Prudential policy is known as group policy 44851.  The Company's purpose in subscribing to the Prudential policy was to provide disability insurance for its employees.  Upon information and belief, the Prudential policy may have been included in and part of the U.S. Foodservice, Inc. Long Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.     Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to Prudential.  Plaintiff believes that as it relates to his claim, Prudential functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5.     Upon information and belief, Plaintiff believes Prudential operated under a conflict of interest in evaluating his claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* Prudential's conflict existed in that if it found Plaintiff was disabled, it was also liable for payment of those benefits.

6.     The Company, Plan and Prudential conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

## *Venue*

7.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

## *Nature of the Complaint*

8.     Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to from any Defendant as a result of being found disabled.

9.     After working for the Company as a loyal employee, Plaintiff became disabled on or about January 11, 2011 due to serious medical conditions and was unable to work in his designated occupation as a Delivery Driver.  Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

10.     Following his disability, Plaintiff applied for short term disability benefits which were approved by Prudential and have been exhausted.

11.     Plaintiff then applied for long term disability benefits under the relevant Prudential policy.   The relevant long term disability policy provides the following definition of disability:

You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- you are under the regular care of a doctor; and

- you have a 20% or more loss in your monthly earnings due to that sickness or injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury,

- you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and

- you are under the regular care of a doctor.

12.     In support of his claim for long term disability benefits, Plaintiff submitted to Prudential medical records from his treating physicians supporting his disability as defined by the relevant Prudential policy.

13.     Prudential approved Plaintiff's claim for long term disability benefits for the period of July 13, 2011 through November 30, 2011.  However, Prudential informed Plaintiff in a letter dated December 14, 2011 that it was terminating benefits beyond November 30, 2011 due to a lack of medical documentation supporting his inability to return to his regular occupation.

14.     In spite of the medical evidence submitted to Prudential supporting Plaintiff's claim for long term disability benefits under the relevant Prudential policy, Prudential referred him for a Physical Work Performance Evaluation with two medical professionals of its own choosing, Jay Ramsey, P.T. and Jeff Sullivan, CDMS.  After a superficial evaluation, Prudential's medical professionals opined Plaintiff was able to engage in his regular occupation.

15.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the December 14, 2011 termination of his long term disability benefits in a letter dated December 19, 2011. In support of his appeal, Plaintiff again submitted additional medical evidence to Prudential.

16.     As part of its review of Plaintiff's claim for long term disability benefits, Prudential obtained a medical records only "paper" review of Plaintiff's claim from Siva

Ayyar, M.D., who is a consulting physician for an entity named MES Solutions. Upon information and belief, Plaintiff believes Dr. Ayyar is a long time consultant for the disability insurance industry and thus, has a conflict of interest. Plaintiff further believes Dr. Ayyar has an incentive to protect his own consulting relationships with the disability insurance industry and Prudential by providing medical record only reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

17. Prudential informed Plaintiff in a letter dated February 17, 2012 it was upholding its prior determination to terminate benefits beyond November 30, 2011.

18. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's February 17, 2012 determination in a letter dated August 7, 2012. In support of his appeal, Plaintiff submitted to Prudential additional medical, vocational and lay witness evidence demonstrating he met any definition of disability set forth in the relevant Prudential policy.

19. In support of his appeal, Plaintiff submitted a narrative letter dated May 13, 2012 from his current treating physician who opined, "I would agree that based on his pain, [Plaintiff] would be unable to fulfill any of his job duties…"

20. In support of his appeal, Plaintiff also submitted a Functional Capacity Evaluation Report dated March 29, 2012 which determined after an extensive evaluation of Plaintiff's serious medical conditions that "…the results confirm that [Plaintiff] would be INCAPABLE of performing any other work, including even SEDENTARY work on a regular and consistent basis…" (original emphasis).

21. Further supporting his appeal, Plaintiff submitted to Prudential a vocational report from a certified vocational expert dated August 6, 2012. After interviewing Plaintiff and reviewing evidence supporting the claim, the vocational expert concluded, "From a

vocational standpoint, it is clear that [Plaintiff] has complied with every medical procedure in an attempt to return to work. Unfortunately, due to a combination of factors...and severe and unrelenting pain he is not able to perform any substantial, gainful activity on a continuous basis that may exist in the national economy."

22. Plaintiff also submitted to Prudential a Functional Capacity Evaluation Review authored by a qualified occupational therapist, who after a review of the report authored by Mr. Ramsey and Mr. Sullivan concluded, "…greater information and elaboration on the testing personnel and their methodology, as well as medication impact is needed before any decisions of work readiness to such a strenuous work level can be made."

23. In addition to the medical records and reports submitted to Prudential, Plaintiff submitted two (2) sworn affidavits including a June 26, 2012 affidavit authored by Plaintiff and a April 4, 2012 affidavit authored by his wife, who confirmed Plaintiff is unable to work in any occupation and that his condition has not improved in any way since his date of disability.

24. Plaintiff also submitted to Prudential Sections 2.22.2 and 2.23.1 from the Arizona Commercial Drivers License Manual which explained in part why the treatment Plaintiff underwent for his medical conditions precluded his ability to drive a vehicle and therefore, why Plaintiff was unable to work in his prior occupation.

25. As part of its review of Plaintiff's claim for long term disability benefits, Prudential again obtained a medical records only "paper" review of Plaintiff's claim from an external physician who is board certified in occupational medicine. Upon information and belief, Plaintiff believes this physician is a long time consultant for the disability insurance industry and thus, has a conflict of interest. Plaintiff further alleges the physician may have an incentive to protect his/her own consulting relationships with the disability

insurance industry and Prudential by providing medical records only reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as Prudential and which supported the denial of Plaintiff's claim.

26.    In a letter dated September 25, 2012, Prudential notified Plaintiff it had denied his appeal for long term disability benefits under the Prudential policy.  In the letter, Prudential also notified Plaintiff he had exhausted his administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

27.    In denying Plaintiff's claim, Prudential failed to adequately investigate and failed to engage Plaintiff and/or his treating physicians in a dialogue during the appeal with regard to what evidence was necessary so Plaintiff could perfect his appeal and claim. Prudential's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason he did not receive a full and fair review.

28.    Upon information and belief, Prudential denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to: failing to investigate by considering all evidence submitted by Plaintiff and de-emphasizing the medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the combination those diagnoses and impairments would have on his ability to work in any occupation; failing to obtain an Independent Medical Examination when the policy allowed for one; failing to engage Plaintiff in a dialogue so he could submit the necessary evidence to perfect his claim and failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in the material

duties of the occupation he performed when he became disabled as well as his ability to perform any occupation.

29.  In evaluating Plaintiff's claim on appeal, Prudential had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in his best interests and other participants" which it failed to do.[1]

30.  Plaintiff believes the reason Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Prudential undertook as decision maker and payor of benefits which created an inherent structural conflict of interest.  Plaintiff believes Prudential's conflict of interest is evident in the fact that it approved his short term disability claim and paid the maximum short term disability benefits, but then when confronted with the potential of paying Plaintiff for many years in his long term disability claim; Prudential denied the claim even though Plaintiff's medical diagnoses and limitations had not changed and the short and long term disability policies contained essentially the same definition of disability.  Due to its conflict of interest, when Prudential denied Plaintiff's long term disability claim, it saved a significant sum of money.

31.  Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Prudential and any individual who reviewed his claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any*

--------------------

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

conflict of interest which may have impacted or influenced Prudential's decision to deny his claim.

32.   With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo,* because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Prudential as referenced herein are so flagrant they justify *de novo* review.

33.   As a direct result of Prudential's decision to deny Plaintiff's disability claim he has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits he may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled, such as health insurance benefits (coverage), retirement or pension benefits, life insurance coverage and the waiver of premiums due on a life insurance policy which may have insured Plaintiff.

34.   Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

35.   Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.   For an Order requiring Defendants to pay Plaintiff disability benefits and any other employee benefits he may be entitled to from any Defendant as a result of being found disabled pursuant to the policy and/or Plan from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon;

B.   For an Order finding that Plaintiff meets any definition of disability set forth in the relevant Prudential policy and directing Defendants to continue paying Plaintiff the

aforementioned benefits until such time as he meets the conditions for termination of benefits;

C.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.     For such other and further relief as the Court deems just and proper.

DATED this 13th day of February, 2013.

SCOTT E. DAVIS. P.C.

By:     */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff